# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **JANE DOE** | § |
| | § |
| *Plaintiff,* | § |
| | § |
| vs. | § |
| | § |
| **KEVIN DALE MEISTER** | § |
| | § |
| *Defendant.* | § |

**PLAINTIFF'S COMPLAINT**

### I.   INTRODUCTION

1. This is an action to seek just compensation for Jane Doe,[1] a victim of human trafficking, and to bring her perpetrator to account under the Trafficking Victims Protection Reauthorization Act, ("TVPRA") 18 U.S.C. § 1581, *et seq*.

### II.   JURISDICTION & VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA, 18 U.S.C. § 1581, *et seq.*

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in the Southern District of Texas, Houston Division, and because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

---

[1] Plaintiff files this lawsuit anonymously because she continues to fear for her safety as a result of Defendant's acts and threats of violence to Plaintiff and Plaintiff's children, as well as his threatened abuse of legal process.

### III.   THE PARTIES

4. Plaintiff Jane Doe is an individual who is a resident of Harris County, Texas.

5. Defendant Kevin Meister is an individual residing in Harris County, Texas. Defendant may be served with process where he resides, at 3818 Sunstone, Houston, TX 77068.

### IV.   FACTS

6. Plaintiff was born in Honduras. After her husband died, Plaintiff struggled to support her four children. To improve her situation, she came to the United States by herself. She moved to Houston, Texas, where she lived with a friend. Her friend introduced her to Defendant—a former Houston airport police officer—at a bar called "Mamacitas." Plaintiff began a sexual relationship with Defendant.

7. Shortly thereafter, Defendant began a pattern of physically assaulting Plaintiff. At various times, Defendant tried to run her over with his car. On other occasions, Defendant assaulted her in parking lots. Several times, Defendant got out of his car, stepped on Plaintiff's feet with his boots, and ground his boots into her feet. He grabbed her arms, dug into them with his nails, and violently shook her. While assaulting her, Defendant routinely insulted her and called her derogatory words.

8. Around this time, Defendant began to threaten her with improper use of legal process. For example, Defendant threatened that he would call the police and report her as a prostitute. Because Defendant is a former police officer, Plaintiff felt particularly frightened when he threatened with police. Defendant communicated to Plaintiff that he threatened and assaulted other women in the past and had a pattern of stalking women. Plaintiff also learned from her friend

that Defendant was violent with an ex-girlfriend and used to threaten her as well. At this point, Plaintiff was afraid and felt trapped.

9. Eventually, Defendant asked Plaintiff to move in with him. With no support system in Houston, and facing constant physical and psychological abuse, Plaintiff felt like she had to say yes. Once she moved in with Defendant, the physical and verbal abuse became more frequent. He humiliated her throughout the day. Defendant even contacted her children, told them she was a prostitute, and sent them threatening text messages.

10. Plaintiff was unable to drive and had no means of leaving Defendant's house herself.

11. After Plaintiff moved into Defendant's house and to the best of Plaintiff's knowledge, Defendant served two months in prison for a separate legal problem, involving assault of a family member. When Defendant was released, he became even more aggressive and angry. Defendant frequently complained to Plaintiff about having no money. Defendant became frustrated because he was unable to get a job. Defendant took his frustration and resentment out on Plaintiff and continually assaulted her, both verbally and physically.

12. Ultimately, Defendant began to force Plaintiff to perform sexual acts with strangers for Defendant's profit. To the best of Plaintiff's knowledge, Defendant created a website and advertised her services for sex and for massages without her consent and without her knowledge. To the best of Plaintiff's knowledge, Defendant also pretended to be a female coordinator on the phone and managed "appointments." Without Plaintiff's consent, Defendant offered her up for massage services, masturbation services, and sexual act services.

13. Male clients began to arrive at Defendant's house expecting Plaintiff to perform sexual acts. Defendant directed the clients to the door of the room where Plaintiff was expected to perform services. Defendant instructed the clients to leave money on a table in the living room, or on a dresser in the room where Plaintiff was expected to perform massages and sexual acts. Defendant kept all the money.

14. Plaintiff rejected the first several men who arrived and demanded services from her. When Plaintiff rejected the men who arrived, Defendant assaulted and threatened her. Defendant assaulted Plaintiff by pushing her against the wall and using his wrists to choke her. Defendant also shoved his knee into Plaintiff's stomach and pressed his hand against her mouth just until she was about to go unconscious. Defendant broke Plaintiff's fingernails. Defendant taunted Plaintiff that he knew how to hurt her without leaving bruises, so the police would never believe her.

15. Defendant involved Plaintiff's children in his controlling threats as well. He threatened Plaintiff by telling her he could have her children killed. He also communicated with her children by text message and told them he could ruin Plaintiff's life because he controlled her and her money.

16. As a result of Defendant's threats and his use of violent force, Plaintiff was forced to perform the labor he demanded of her.

17. The forced labor occurred constantly until the end of 2013. Plaintiff was forced to work performing sex acts every day. On some instances, Defendant forced her to work until 1:00am, and then start again at 5:00am. Sometimes she was forced to work all night. Defendant forced Plaintiff to work over weekends. From time to time, Defendant transported her in his red Ford Ranger truck to discrete locations to perform sexual acts. Sometimes she was transported in

his truck to private homes that were up to two hours away. During Plaintiff's forced work, Defendant often "ran" the licenses plates of the various clients.

18. Once the forced labor began, Plaintiff was unable to extricate herself. When Plaintiff attempted to refuse to service clients, Defendant called her on her cell phone and admonished that it was her job to satisfy them. He threatened Plaintiff by saying she knew what would happen if she failed to perform for the clients. When he reprimanded and threatened her, Defendant listed all the bills for which he was responsible to guilt and manipulate her.

19. When Defendant learned that Plaintiff sometimes took breaks during her forced labor, Defendant became enraged. For example, Defendant once threw a lamp at Plaintiff's feet and the shards of glass cut her feet. Defendant also poured liquid all over her. In one instance, when he became angry, he threw ash trays at her.

20. Defendant continued to physically and verbally assault Plaintiff during her years of forced labor. Plaintiff believed that if she refused to perform sexual services for the clients Defendant procured, he would kill her.

21. Defendant maintained Plaintiff's dependence on him by controlling her money. Defendant gave Plaintiff a weekly allowance of between $100-200 to send to her four children. Other times, he mailed her children the money directly and she received nothing. Defendant frequently reminded Plaintiff that her children depended on this money. Because Defendant controlled her time, forced her to work constantly for him, and provided her no means to leave the house, Plaintiff had no other source of income.

22. Plaintiff tried to escape the house twice. Plaintiff did not know how to drive, so she had to escape by foot. When she fled, Defendant contacted her by phone and threatened her with

abuse of the legal process, including reporting her as a prostitute. Defendant chased her down with his car and brought her back.

23. Defendant also threatened Plaintiff that if she tried to report his conduct, the police would not believe her due to her ethnicity.

24. In late 2012 or early 2013, Defendant got a job at Jet Lending, LLC. Having found a source of income for himself, Defendant became more amenable to Plaintiff's desperate pleas to let her stop. Defendant nevertheless continued to force her to perform sexual acts for other men. Around November or December of 2013, Plaintiff finally convinced Defendant to stop forcing her to perform sexual acts and massages.

25. Plaintiff ultimately lived with Defendant until 2017. While they lived together, Defendant sexually assaulted Plaintiff in addition to his other physical and verbal abuse. After fights, Defendant would re-enter the bedroom, undress and rape her. Defendant also cut her clothes with knives and told her he obtained pleasure from doing so because he felt like he was cutting her. This psychological abuse paralyzed Plaintiff.

26. By 2017, Plaintiff felt able to finally free herself from her living situation.

27. With great courage, Plaintiff files this lawsuit to bring Defendant to justice and claim responsibility for his horrific actions.

## V. CAUSES OF ACTION

### COUNT 1

**TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, FORCED LABOR (18 U.S.C. §§ 1589, 1595)**

28. Plaintiff incorporates each of the foregoing paragraphs by reference.

29.     The TVPRA imposes criminal penalties and civil liability on any person who knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint. 18 U.S.C. § 1589(a).

30.     Defendant knowingly obtained and provided Plaintiff's labor services by using force, physical restraint, and threats of force and physical restraint against her.

31.     Defendant knowingly obtained and provided Plaintiff's labor services by means of serious harm, including physically and psychologically abusing her such that a reasonable person of the same background and in her circumstances would perform and continue to perform services to avoid incurring such harm.

32.     Defendant knowingly obtained and provided Plaintiff's labor services by means of threats of serious harm to Plaintiff's children, including physically and psychologically abusing her such that a reasonable person of the same background and in her circumstances would perform and continue to perform services to avoid incurring such harm.

33.     Defendant knowingly obtained and provided Plaintiff's labor services by threatened abuse of law, including threatening to report her to the police as a prostitute.

34. Defendant knowingly obtained and provided Plaintiff's labor services by means of a scheme, plan, or pattern intended to cause her to believe that if she did not perform the labor required of her, Plaintiff or Plaintiff's children would suffer serious harm or physical restraint.

35. As a result of Defendant's conduct, Plaintiff was compelled to continue laboring for him and suffered damages. Pursuant to 18 U.S.C. §1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages.[2]

## COUNT II

## TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, TRAFFICKING WITH RESPECT TO INVOLUNTARY SERVITUDE OR FORCED LABOR (18 U.S.C. §§ 1590, 1595)

36. Plaintiff reincorporates each of the foregoing paragraphs by reference.

37. The trafficking into servitude provision of the TVPRA, 18 U.S.C. § 1580, provides that it is a violation to knowingly recruit, harbor, transport, provide, or obtain by any means, any person for labor or services in violation of the TVPRA.

38. Defendant knowingly recruited, harbored, transported, provided and obtained Plaintiff for labor and services in violation of the TVPRA.

---

[2] The TVPRA authorizes punitive damages. *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017); *see also Alfaro v. Gandy*, CV H-18-1761, 2019 WL 1789587, at *1 (S.D. Tex. Apr. 24, 2019).

39. Defendant recruited Plaintiff to live with him, harbored her in his home, transported her to clients for forced sexual labor, and provided Plaintiff for labor and services in the form of forced prostitution.

40. Plaintiff suffered damages as a result of Defendant's conduct.

41. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages.

## COUNT III

## TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, SALE INTO INVOLUNTARY SERVITUDE, U.S.C. § § 1584, 1595

42. Plaintiff reincorporates each of the foregoing paragraphs by reference.

43. Defendant knowingly and willfully held Plaintiff in involuntary servitude for a term of at least one year, through express and implied threats and through coercion manifested by, among other things, serious harm, and threats of serious harm against her family.

44. Plaintiff is entitled to bring a civil claim against Defendant for his violation of 18 U.S.C. § 1584 under 18 U.S.C. § 1595.

45. Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct. Because of the malicious and wantonly abusive nature of Defendant's conduct, Plaintiff is also entitled to an award of punitive damages.

## VI.   JURY DEMAND

46.   Plaintiff hereby requests a trial by jury.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

1. Rule in favor of every cause of action asserted in the Complaint;

2. Award such damages as may be appropriate, including compensatory damages, damages for past, present, and future mental pain, anguish, emotional distress, and humiliation, and punitive damages;

3. Award Plaintiff her attorneys' fees and costs;

4. Award Plaintiff pre-and post-judgment interest; and

5. Award any such other and further relief as the Court deems just and proper.

Dated: December 30, 2021

Respectfully submitted,

By:   */s/ Bruce D. Oakley*
Bruce D. Oakley
Texas SBN 15156900
Southern District ID No. 11824
Blake A. Jenkins
Texas Bar No. 24097885
Southern District No. 2887814
**HOGAN LOVELLS US LLP**
609 Main Street, Suite 4200
Houston, Texas 77002
T  (713) 632-1400
D  (713) 632-1420
F  (713) 632-1401
bruce.oakley@hoganlovells.com
blake.jenkins@hoganlovells.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of December, 2021, the foregoing document was filed with the Clerk of Court using the CM/ECF system which sends notification to all counsel of record.

                                  */s/ Bruce D. Oakley*
                                  Bruce D. Oakley